UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23407-ALTMAN/Lett

**ARLENE MITCHELL**,

    *Plaintiff*,

*v.*

**CARNIVAL CORPORATION**,

    *Defendant*.

_____/

## ORDER ON MOTION TO DISMISS

The Defendant, Carnival Corporation, has moved to dismiss Count V of the Plaintiff's Complaint [ECF No. 1]. *See* Motion to Dismiss [ECF No. 18] ("MTD"). For the reasons we outline below, the MTD is **DENIED**.

### THE FACTS

On September 5, 2024, our Plaintiff, Arlene Mitchell, sued the Defendant, Carnival, asserting five claims for relief: Negligent Failure to Remedy (Count I); Negligent Failure to Warn (Count II); Negligent Design, Installation, and/or Approval of the Subject Floor and the Vicinity (Count III); Negligence for the Acts of Carnival's Crew, Staff, Employees, and/or Agents, Based on Vicarious Liability (Count IV); and Vicarious Liability for the Negligent Design, Installation, and/or Approval of the Subject Floor and the Vicinity (Count V). *See generally* Complaint [ECF No. 1]. Mitchell alleges that, on May 26, 2024, while she was a passenger on the *Conquest*, Carnival allowed the floor "past the soft serve station, . . . [as Mitchell] transitioned from carpet to a tile surface," to become "wet and slippery," causing Mitchell's "feet [to] slip out from under and causing her to slip and fall[.]" *Id.* ¶¶ 13–14; *see also id.* ¶ 17 ("This dangerous condition caused [Mitchell's] incident and injuries because it caused her to slip, thereby causing her to fall.")

"Previous passengers in prior cases suffered prior slip and fall incidents involving the same surface on the same ship," and other passengers had slipped and fallen on the same surface on *other* Carnival ships. *Id.* ¶ 18.f. The Plaintiff's notice allegations are even more specific:

> [The Plaintiff] observed Carnival crewmembers in the subject area. These crewmembers were in the immediate vicinity, within viewing distance, and had a direct line of sight to the spot where Mitchell fell. Moreover, several crewmembers approached Mitchell after she fell and told her that they have witnessed many people fall in this exact same area due to the unreasonably slippery floor. Further, these crewmembers told Mitchell that "management was going to switch back to carpet from tile because of all of the slip and fall incidents that occur in the area."

*Id.* ¶ 18.a.

The Plaintiff alleges that Carnival "participated in the installation and/or design of the subject floor," or that it, "alternatively, . . . accepted the floor with its unreasonably slippery defective design present after having been given an opportunity to inspect the ship and materials on it, including the subject floor, such that [it] should have known of the unreasonably slippery defective design of the subject floor before providing it for public use." *Id.* ¶ 18.c.

As a result of her fall, Mitchell "sustained severe injuries that include, but are not limited to, [i]mpaction fracture at the lateral tibial plateau and posterior aspect of the lateral femoral condyle, [p]artial-thickness MCL complex tear, [p]ossible low-grade insertional partial-thickness tear of the biceps femoris, and [p]ossible medial meniscus tear, with a recommendation for a repeat MRI on a high-field magnet for better characterization." *Id.* ¶ 15. These "severe bodily injuries," which are "permanent and/or continuing in nature," have "result[ed] in pain and suffering, disability, scarring, disfigurement, mental anguish," and other damages. *Id.* ¶¶ 80–81.

Carnival now moves to dismiss Count V of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* MTD at 1. Carnival contends that Mitchell cannot escape the "relax[ed] . . . notice requirement in vicarious liability situations" because she has pointed to no "identifiable employee-actor's interaction with a third party." *Id.* at 7; *see also* Reply at 3–4 ("Plaintiff's Complaint

fails to contemplate or identify any specific crewmembers, or any specific actions or inaction by these crewmembers which caused her injury."). Carnival thus contends that "there is no specific tortfeasor alleged in Count V," and that the "Plaintiff alleges multiple duties this pool of employees allegedly owed to her – further indicating a specific employee will be difficult to discern." MTD at 9. Carnival suggests that the "combination of no specific, alleged tortfeasor – paired with a list of different duties owed by Carnival's employees – indicates Count V is not a plausible vicarious liability claim." *Ibid.* We disagree.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

To plead direct liability in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3)

3

the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).[1] "With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This reasonable-care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). A plaintiff can establish constructive notice with evidence that the "defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720 (cleaned up). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.' " *Ibid.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)).

"But. . . vicarious liability, which is not based on the shipowner's conduct[,] . . . allows an otherwise non-faulty employer to be held liable for the negligent acts of [a tortfeasor] *employee* acting within the scope of employment." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) (emphasis added). "Unlike a party that is directly liable for a tort, a party that is vicariously liable has not committed any breach of duty to the plaintiff but is held liable simply as a matter of legal imputation of responsibility for another's tortious acts." *Ibid.* (cleaned up).

---

[1] "Claims arising from torts committed aboard ships on navigable waters are governed by general maritime law." *Breaux v. NCL (Bahamas) Ltd.*, 2022 WL 2304254, at *6 (S.D. Fla. June 24, 2022) (Altman, J.); *see also Keefe*, 867 F.2d at 1320 ("[W]e note that the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law[.]").

## ANALYSIS

Mitchell has plausibly alleged that Carnival should be held vicariously liable for its *employees'* defective design of the floor. "A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both." *Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1310 (S.D. Fla. 2022) (Altonaga, J.). To establish a shipowner's vicarious liability in a maritime-tort case, a plaintiff must show that a tortfeasor employee committed "negligent acts . . . within the scope of employment." *Branyon v. Carnival Corp.*, 2024 WL 3103313, at *4 (S.D. Fla. June 24, 2024) (Altman, J.) (cleaned up).[2] And "liability based on negligent design requires the plaintiff to produce evidence that the defendant actually created, participated in or approved the alleged improper design." *Spotts v. Carnival Corp.*, 711 F. Supp. 3d 1360, 1370 (S.D. Fla. 2024) (Altman, J.) (cleaned up). Mitchell has done enough to get to discovery on her vicarious-liability, negligent-design claim here.[3]

---

[2] Mitchell sometimes conflates Carnival's duties with the duties of its employees—and the latter (both parties agree) are the only duties that are relevant to Count V (the vicarious-liability count). *See, e.g.*, Complaint ¶ 94 (titled "duties owed by Carnival" (cleaned up)); *id.* ¶ 102 (titled "Carnival breached its duties."); *id.* ¶ 104 ("As a result of Carnival's negligence . . ."). In Count V, however, the Plaintiff *does* allege that Carnival's *employees* were negligent. *See, e.g., id.* ¶ 94 (Carnival "is therefore vicariously liable for the active *negligence of its crew* for *their* negligent design, construction and selection of the subject area" (emphasis added)); *id.* ¶ 97 (Carnival's "*employees* participated in and/or approved of the design of the subject area including the unreasonably slippery floor" (emphasis added)). So, Mitchell has done precisely what Judge Bloom (of our Court) criticized the plaintiff for failing to do in *Smith v. Carnival Corp. & PLC*, 2022 WL 16791783 (S.D. Fla. Nov. 8, 2022) (Bloom, J.). In that case, the court "agree[d] that Plaintiff adequately indicated a specific individual or individuals employed by Defendant as the tortfeasor[.]" *Id.* at *4. But the relevant count there did "not adequately plead negligence committed by *that* tortfeasor." *Ibid.* Instead, as Judge Bloom explained, "[the] [p]laintiff set out the duty owed by [d]efendant, not its employee, and contend[ed] that [d]efendant's breach of that duty was the actual and proximate cause of [p]laintiff's injury, rather than specifically identifying how [d]efendant's employee breached a duty and how that breach caused [p]laintiff's injury." *Ibid.* On that basis, Judge Bloom found "that Count VI of the [c]omplaint fail[ed] to state a claim as a matter of law." *Ibid.*

[3] For direct-liability claims, "a defendant can only be liable for negligent design 'if it had actual or constructive notice of [the] hazardous condition.'" *Liles v. Carnival Corp. & PLC*, 2023 WL 34644, at *2 (S.D. Fla. Jan. 4, 2023) (Bloom, J.) (quoting *Groves*, 463 F. App'x at 837). But, "when a passenger makes a maritime negligence claim against a shipowner based on an *employee's* negligence under a theory of *vicarious* liability, the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition." *Yusko*, 4 F.4th at 1166 (emphases added). Since Count V pleads a vicarious-liability claim, Mitchell doesn't need to show that *Carnival* was on notice of the defective design.

5

According to Mitchell, "[a]t all times material herein, the crew aboard the Carnival *Conquest* were the employees of the Defendant[.]" Complaint ¶ 94 (cleaned up). Mitchell incorporates into Count V her allegation that these employees were acting "within the course and scope of their employment[.]" *Id.* ¶ 32. The employees, Mitchell alleges, "have a duty of care which includes to design, construct and select materials for all areas and features of its vessels, including the subject areas, as part of their duty of reasonable care under the circumstances." *Id.* ¶ 94. But, Mitchell adds, these "employees breached their duties of care . . . and were negligent by approving, designing, constructing, and/or selecting the materials for the subject floor on board the . . . *Conquest* where the subject incident occurred." *Id.* ¶ 102. Specifically, Mitchell contends that the employes who worked in "Carnival's . . . New Build and Refurbishment departments plan[ned], organize[d], operate[d] and/or control[led] the design, construction, selection of materials, repairs, redesign, upgrades, updates and/or modifications to Carnival ships." *Id.* ¶ 96 (cleaned up). Mitchell then outlines her view of the ways in which *these specific* Carnival employees—*i.e.*, the employees in Carnival's New Build and Refurbishment Departments charged with the design of the *Conquest*'s floors—behaved negligently in their design of the *Conquest*:

> CARNIVAL's employees custom designed, and custom built the CARNIVAL *Conquest* to their specifications. CARNIVAL employees participated in and/or approved of the design of the subject area including the unreasonably slippery floor. CARNIVAL's employees participated in and/or approved of the selection of the materials for the subject area including the subject floor. CARNIVAL's employees participated in and/or approved of the installation of the materials for the subject area including the unreasonably slippery floor. CARNIVAL's employees chose to install this same unreasonably slippery floor throughout its fleet. CARNIVAL's employees continue to repair, modify and/or install the same unreasonably slippery floor on all its ships, including the CARNIVAL *Conquest*. At all times CARNIVAL's employees had the ultimate control over the design and construction of the CARNIVAL *Conquest*. CARNIVAL's employees had the right to inspect both the designs on paper and the design and construction at the yard. CARNIVAL's employees had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the CARNIVAL *Conquest* and all other CARNIVAL ships within the fleet including the same unreasonably slippery floor. CARNIVAL's employees had the right to reject any and all items, designs and construction. CARNIVAL's employees held the ultimate control under their contract

> with the yard to withhold payment if an item or design is rejected or at issue and not resolved. CARNIVAL's employees approved of the design, construction, and selection of materials of the subject area demonstrated by the fact that CARNIVAL has operated and maintained the ship continuously since on or about 2002. . . . CARNIVAL's employees knew or should have known that the subject area including the unreasonably slippery floor it chose and installed on the CARNIVAL *Conquest* was unreasonably slippery. . . . CARNIVAL's employees' negligent design, construction, and selection of materials for the subject area on board the CARNIVAL *Conquest* proximately caused MITCHELL's injuries.

*Id.* ¶¶ 97–98, 103. And Mitchell contends that, although "[a] passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees, . . . Carnival's crew either had actual notice and/or had constructive notice of the dangerous condition[.]" *Id.* ¶¶ 100–01 (cleaned up). These allegations are sufficient, at this early stage of the case, to support Mitchell's claim that the crewmembers *themselves* acted negligently, and that Carnival should be vicariously liable for that negligence. *See Mclean v. Carnival Corp.*, 2023 WL 372061 at *3 (S.D. Fla. Jan. 24, 2023) (Scola, J.) ("The Plaintiff pleads sufficient facts to make a claim for vicarious liability. First, the Plaintiff pleads that certain employees of Carnival's 'misaligned the gangway' that she was to use to board the ship.").

Carnival insists that "Count V presents a scenario contemplated by *Yusko* and *Holland* [*v. Carnival Corp.*, 50 F.4th 1088, 1097 (11th Cir. 2022)]. Namely, that Plaintiff is limited to a theory of direct liability (which she has already brought under negligent design in Count III), as she is unable to identify a specific employee whose negligence caused her injury." MTD at 9–10; *see also* Reply at 2 ("Crucially, the Eleventh Circuit observed [in *Holland*] that the plaintiff did not identify any specific crewmember whose negligence caused [his] injury." (quoting *Mclean*, 2023 WL 372061 at *3 (cleaned up))); *id.* at 4 ("Plaintiff's broad allegations of 'employees' or 'crew' would not enable defendant to identify any specific crewmembers during the discovery process.").

But Mitchell doesn't need to identify a *specific* crewmember in her vicarious-liability claim. *See Mclean*, 2023 WL 372061, at *3 ("While the Plaintiff does not specifically name the crewmembers,

7

there is no requirement in the law that she do so, and it would seem fundamentally unfair to require the Plaintiff to remember the names of each of the crewmembers involved in the incident simply to file a complaint. There were, undoubtedly, specific crewmembers involved in the incident that the Plaintiff alleges."); *Hunter*, 609 F. Supp. 3d at 1311 n.3 ("Defendant argues . . . that the Amended Complaint does not adequately identify the crewmember whose alleged negligence would make Defendant liable. . . . This argument is . . . unpersuasive. . . . Additionally, the Amended Complaint identifies the allegedly negligent employee by his or her position (cabin steward), cabin assignment (cabin 3104), and conduct (placing the ladder on the short end of the bunkbed); and alleges that these facts will easily enable Defendant to identify the employee during discovery. . . . These allegations suffice.")); *Branyon*, 2024 WL 3103313, at *5 ("At this stage of the case, then, we see no reason to preclude the Plaintiff from proceeding with her theory that Carnival is vicariously liable for the negligent acts and omissions of an identified crewmember employee, a photographer's assistant whose negligence contributed to Ms. Branyon's trip and fall." (cleaned up)). And, as we've seen, Mitchell's allegations are nothing like "Holland['s] [attempt to] . . . avoid pleading the elements necessary to allege Carnival's direct liability for negligent maintenance and failure to warn by titling his claims as claims for vicarious liability and asserting in a conclusory allegation that Carnival was vicariously liable for *any* negligent action by *any* of its crewmembers." *Holland*, 50 F.4th at 1097 (emphases added). If, by summary judgment, Mitchell has *still* failed to identify the specific crewmembers who were (allegedly) responsible for the (supposedly) faulty floor design, Carnival will be able to reraise this issue at that time.

* * *

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the Defendant's Motion to Dismiss [ECF No. 18] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on November 18, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record