# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-24668-CIV-LENARD/O'SULLIVAN

**DEBORAH REED,**

> Plaintiff,

**v.**

**ROYAL CARIBBEAN CRUISES, LTD.,**

> Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S OMNIBUS MOTION IN LIMINE (D.E. 128) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S OMNIBUS MOTION IN LIMINE (D.E. 130)

**THIS CAUSE** is before the Court on Plaintiff Deborah Reed's Omnibus Motion in Limine, (D.E. 128), filed February 8, 2021. Defendant Royal Caribbean Cruises Ltd. filed a Response on February 28, 2021, (D.E. 150), to which Plaintiff filed a Reply on March 8, 2021, (D.E. 158).

Also before the Court is Defendant's Omnibus Motion in Limine, (D.E. 130), filed February 8, 2021. Plaintiff filed a Response on February 22, 2021, (D.E. 141), to which Defendant filed a Reply on March 9, 2021, (D.E. 160).

Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.

## I. Background

This is a maritime personal injury action in which Plaintiff is suing Royal Caribbean for injuries allegedly sustained while participating in an organized dance party aboard

Defendant's *Vision of the Seas* cruise ship. (See Second Am. Compl. ¶¶ 11-13.) According to the operative Second Amended Complaint, during the dance party "a fellow intoxicated male passenger, JOHN DOE, approached Plaintiff." (Id. ¶ 14.)

> Plaintiff initially consented to dancing with JOHN DOE, but Plaintiff did not consent to any touching between the two. Nonetheless, JOHN DOE grabbed Plaintiff's hand and despite her pleas that he not twirl her, JOHN DOE refused to comply with Plaintiff's requests. Suddenly, the JOHN DOE spun Plaintiff and forcefully released her causing Plaintiff to fall and land on the marble floor. As a result of the fall, Plaintiff suffered traumatic injuries that included, but are not limited to, a fractured wrist which required surgery.

(Id. ¶ 15.)

On May 26, 2020, Plaintiff filed the operative Second Amended Complaint with leave of the Court, naming Royal Caribbean and John Doe as Defendants. (See D.E. 35.) The Second Amended Complaint asserts the following claims against Royal Caribbean:

- Count I: Assumption of Duty: negligent supervision and training, (id. ¶¶ 17-29);

- Count II: Assumption of Duty: failure to adequately warn, (id. ¶¶ 30-48); and

- Count III: Negligence: over service of alcohol, (id. ¶¶ 49-68).

Count IV of the Second Amended Complaint is a claim for negligence against John Doe, (id. at 13-14), who has since been identified as Augustine Morris, (see D.E. 84 at 1 n.1). Plaintiff subsequently filed a Notice of Voluntary Dismissal Without Prejudice as to Mr. Morris. (D.E. 169.)

Defendant moved for summary judgment on Counts I through III. (See D.E. 84.) The Court dismissed Count I with prejudice but denied the motion for summary judgment as to Counts II and III. (D.E. 175.)

2

The Parties have filed these cross-Omnibus Motions in Limine seeking to exclude certain evidence and argument from introduction at trial.  (D.E. 128, 130.)

## II.      Legal Standard

A motion in limine presents a trial court with pretrial issues regarding admissibility of evidence that a party is likely to present at trial.  See Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd., No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial."  Id.

Generally, "[m]otions in limine are disfavored."  Id.  "In fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds."  United States v. Gonzalez, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).  Accordingly, if evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context."  Id. (internal citation and quotation marks omitted).  Even when a trial court does rule in limine, its ruling "remains subject to reconsideration by the court throughout the trial" and the parties may renew their objections as appropriate.  Stewart v. Hooters of Am., Inc., No. 8:04–cv–40–T–17–MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007).

## III.   Discussion

### a.   Plaintiff's Motion

Plaintiff's Motion seeks to exclude: (1) testimony from Defendant's corporate representative that differs from her deposition testimony; (2) any reference to prior injuries or lawsuits plaintiff was involved in; (3) any reference to the prior crimes, injuries, or lawsuits Plaintiff's sister was involved in; (4) any reference to Plaintiff being a cigarette smoker; (5) any reference to Plaintiff's elective/cosmetic surgeries; (6) evidence of Plaintiff's bankruptcy; (7) evidence that Plaintiff drank alcohol or was intoxicated; and (8) statements made by Augustine Morris (i.e., "John Doe").  (D.E. 128.)

### 1.   Defendant's corporate representative

First, Plaintiff seeks to exclude any testimony from Defendant's corporate representative, Amanda Campos, that differs from her deposition testimony.  (Id. at 1-2 (citing Rainey v. Am. Forest & Paper Ass'n, Inc., 26 F. Supp. 2d 82, 94-95 (D.D.C. 1998)).) She argues that when a natural person testifies differently at trial than she did during her deposition her credibility can be impeached, whereas the same is not true for a corporate representative.  (Id. at 2.)  Plaintiff argues that is unfair.  (Id.)

Defendant argues that Plaintiff's request is vague and improper.  (D.E. 150 at 1-2.) It argues that Ms. Campos was deposed twice and "[a]t no point throughout discovery did Plaintiff ever raise any issue with [Ms. Campos's] testimony or alleged inability to properly respond to any noticed areas of inquiry other than requesting a second deposition to learn what Defendant knew about Charlie Electores' investigation on the eve of Plaintiff's incident."  (Id. at 2.)  It argues that the case Plaintiff relies on, Rainey, "has been heavily

4

criticized by other courts throughout the country." (Id.) Defendant urges the Court to adopt the "sounder view" that testimony by a corporate representative is evidence "'which, like any other deposition testimony, can be contradicted and used for impeachment purposes.'" (Id. (quoting Green v. Springfield Med. Care Sys., Case No. 5:13-cv-168, 2014 U.S. Dist. LEXIS 87911, at *25-26 (D. Vt. June 24, 2014)).)

In her Reply, Plaintiff argues that the Court should adopt the approach taken by Rainey and prohibit any testimony by the corporate representative that is different from her deposition testimony. (D.E. 158 at 2.) She argues that the only decision from this district directly addressing the issue adopted the Rainey approach. (Id. (citing Topp v. Uniden Am. Corp., No. 05-21698-CIV, 2007 WL 4218998, at *1 (S.D. Fla. Nov. 28, 2007)).)

The Court grants Plaintiff's Motion on this issue. Pursuant to Federal Rule of Civil Procedure 30(b)(6), a corporate party noticed for a deposition "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; . . . The persons designated must testify about information known or reasonably available to the organization." The deposition testimony of a Rule 30(b)(6) corporate representative is binding on the corporation and the corporate representative. Green, 2014 U.S. Dist. LEXIS 87911, at *24 ("[T]he deposition binds the 30(b)(6) deponent as a representative of the party[.]"); Waters v. Hall, CIVIL ACTION: 1:19-00798-KD-C, 2021 WL 1168695, at *4 (S.D. Ala. Mar. 26, 2021) ("'[E]leventh hour alteration' of a corporate representative's testimony is disallowed."). However, the deposition testimony of a corporate representative is not a "judicial admission" and it therefore may be contradicted by other evidence:

5

It is true that a corporation is "bound" by its Rule 30(b)(6) testimony, in the same sense that any individual deposed under Rule 30(b)(1) would be "bound" by his or her testimony. All this means is that the witness has committed to a position at a particular point in time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue. Deposition testimony is simply evidence, nothing more. Evidence may be explained or contradicted. Judicial admissions, on the other hand, may not be contradicted.

W.R. Grace & Co. v. Viskase Corp., No. 90 C 5383, 1991 WL 211647, at *2 (N.D. Ill. Oct. 15, 1991) (citing Brown & Root, Inc. v. Am. Home Assur. Co., 353 F.2d 113 (5th Cir. 1965)). See also Green, 2014 U.S. Dist. LEXIS 87911, at *24; Waters, 2021 WL 1168695, at *4; A & E Prods. Grp., L.P. v. Mainetti USA Inc., No. 01 Civ. 10820(RPP), 2004 WL 345841, *7 (S.D.N.Y. 2004).

Here, Plaintiff does not seek to prevent Defendant from presenting other evidence that contradicts Ms. Campos's Rule 30(b)(6) deposition testimony, she merely seeks to prevent Ms. Campos from contradicting her own Rule 30(b)(6) deposition testimony. (See D.E. 128 at 1-2; D.E. 158 at 2.) Because the relevant case law holds that a Rule 30(b)(6) corporate representative may not contradict her deposition testimony at trial, the Court grants Plaintiff's Motion on this issue.

### 2. Prior injuries and lawsuits

Next, Plaintiff seeks to preclude any reference to prior injuries or lawsuits she has been involved in.[1] (D.E. 128 at 2-3.) She argues that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion. (Id. (citing

---

[1] According to Plaintiff's Motion, she "made a previous personal injury claim against H-E-B, a grocery store in the Texas area." (D.E. 128 at 3.)

Richardson v. Mo. Pac. R.R. Co., 186 F.3d 1273, 1277 (10th Cir. 1999); Allstate Ins. Co. v. Vizcay, No. 8:11–CV–804–EAK–EAJ, 2014 WL 1292890, at *1 (M.D. Fla. Mar. 31, 2014)).)   She argues that the incident resulting in Plaintiff's prior injuries are not substantially similar to the incident aboard the *Vision of the Seas*.  (Id. at 3 (discussing Miller ex rel. Miller v. Ford Motor Co., No. 2:01-CV-545-FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)).)

Defendant argues that Plaintiff's prior personal injury lawsuit is relevant to whether Plaintiff has a propensity to fall, and her pre-existing orthopedic health conditions are relevant to the cause of her fall.  (D.E. 150 at 3 (citing Higgs v. Costa Croceire S.P.A., 720 F. App'x 518, 520-21 (11th Cir. 2017).)  It argues that Defendant's expert physician opined that Plaintiff rolled her ankle and fell suddenly, which contradicts Plaintiff's claim that John Doe caused her to fall.  (Id.)  It further argues that her "fake hip" and "two fake knees" were reasons Plaintiff asserted she did not want to dance with John Doe in the first place, making those injuries relevant to the issue of causation and the scope of damages.  (Id. (citing Baptista v. Carnival Corp., Case No. 1:17-cv-22115-KMM, 2018 U.S. Dist. LEXIS 228821, at *6-8 (S.D. Fla. Mar. 5, 2018); Santana v. Carnival Corp., CASE No. 09-23113-cv-GOLD, 2011 WL 13220283, at *6 (S.D. Fla. Sept. 7, 2011)).)

In her Reply, Plaintiff argues that Defendant's Response completely ignores the risk of unfair prejudice and "the substantial similarity doctrine."  (D.E. 158 at 3.)

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

7

evidence." Fed. R. Evid. 403. However, "[b]ecause it allows a trial court to exclude evidence that is probative, Rule 403 is 'an extraordinary remedy which should be used sparingly.'" Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting United States v. King, 713 F.2d 627, 631 (11th Cir. 1983)). "In applying Rule 403, courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010)). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

The Court finds that evidence of Plaintiff's prior lawsuit and injuries is not clearly inadmissible on all potential grounds, and that its admissibility should be determined in context at trial. Specifically, this evidence may be relevant to causation and damages. See Higgs, 720 F. App'x at 520-21 (finding that the district court abused its discretion in excluding evidence of the plaintiff's prior falls because its probative value was greater than any possible prejudice); Baptista, 2018 U.S. Dist. LEXIS 228821, at *6-7 ("Here, evidence of Plaintiff's pre-existing knee arthritis is relevant to Defendant's alternate theory of causation—that Plaintiff fell because her knee buckled."); Santana, 2011 WL 13220283, at *6 ("[A]ny preexisting injuries that Plaintiff had before her accident from this case are certainly relevant in terms of the Parties' arguments concerning damages and preexisting conditions."). The Court cannot determine at this stage whether the danger of unfair prejudice substantially outweighs the prejudicial effect. Stated differently, the Court cannot determine whether the evidence of Plaintiff's prior lawsuit and injuries is "clearly inadmissible" under Rule 403. Gonzalez, 718 F. Supp. 2d at 1345.

8

If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." Id. Therefore, Plaintiff's Motion is **DENIED** to the extent it seeks an order in limine excluding evidence of Plaintiff's prior lawsuit and injuries.

### 3. Plaintiff's sister's prior crimes, injuries, and lawsuits

Next, Plaintiff seeks to preclude any reference of prior crimes, injuries, or lawsuits her sister, Mary Denise Whatley, was involved in. (D.E. 128 at 4.) She argues that these issues are irrelevant, and any probative value they might have is substantially outweighed by the danger of unfair prejudice and confusion. (Id. (citing Richardson, 186 F.3d 1277; Allstate, 2014 WL 1292890).) She argues that although Ms. Whatley testified at her deposition that she had been charged with a felony, evidence of prior arrests that occurred more than ten years prior to an incident are presumptively inadmissible. (Id. (citing Smith v. Specialty Pool Contractors, No. 02:07–cv–1464, 2009 WL 799748, at *1 (W.D. Pa. Mar. 25, 2009)); Richardson, 186 F.3d at 1275-77).)

Defendant argues that Plaintiff's request is vague and generic. (D.E. 150 at 4.) It argues that although Ms. Whatley admitted to having a prior felony conviction, she refused to provide details regarding what the felony conviction was for or when it occurred. (Id.) Defendant believes that Ms. Whatley has multiple felony convictions, including one for a crime of dishonesty which, it argues, "is extremely relevant in a case where Ms. Whatley has submitted an affidavit and has testified at a deposition where she stormed out of the room after being questioned about whether she had spoken with anyone at Defendant's

9

counsel's office about the circumstances under which she executed an affidavit in support of Plaintiff's claims." (Id.)

In her Reply, Plaintiff argues that the evidence is presumptively inadmissible. (D.E. 158 at 3 (citing Smith, 2009 WL 799748, at *1).) She argues that "Defendant seeks to introduce evidence of two allegedly forged checks in 1999 and 2002, . . . and alleged possession of cocaine in 1997 . . . ." (Id. at 4.) She argues that because these incidents occurred over ten years ago and are irrelevant, they should be excluded.

Rule 609(a) provides that evidence of a prior criminal conviction that was punishable by imprisonment for more than one year "must be admitted, subject to Rule 403, in a civil case" for purposes of impeaching the witness's credibility. Fed. R. Evid. 609(a)(1)(A). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, "[b]ecause it allows a trial court to exclude evidence that is probative, Rule 403 is 'an extraordinary remedy which should be used sparingly.'" Aycock, 769 F.3d at 1069 (quoting King, 713 F.2d at 631). "In applying Rule 403, courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting Alfaro-Moncada, 607 F.3d at 734). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

Additionally, "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime

required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

Pursuant to Rule 609(b), "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[,]" evidence of a conviction is admissible only if:

> **(1)** its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

> **(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Fed. R. Evid. 609(b).

The Court initially observes that Defendant has not argued that it seeks to introduce evidence of Ms. Whatley's 1997 conviction for possession of cocaine. Therefore, the Court **GRANTS** Plaintiff's Motion to the extent it seeks an order in limine excluding Ms. Whatley's 1997 conviction for possession of cocaine.

However, the Court finds that evidence of Ms. Whatley's 1999 and 2003 convictions for forging checks are not clearly inadmissible on all potential grounds. Specifically, this evidence may be relevant to Ms. Whatley's credibility, as Plaintiff does not rebut Defendant's argument that these convictions involve a crime of dishonesty. See Fed. R. Evid. 609(a)(2). Although the convictions are more than ten years old and therefore subject to the limitations set out in Rule 609(b), the evidence is not "clearly inadmissible" on all potential grounds. Gonzalez, 718 F. Supp. 2d at 1345.

If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in

11

proper context." Id. Therefore, Plaintiff's Motion is **DENIED** to the extent it seeks an order in limine excluding evidence of Ms. Whatley's prior convictions for forging checks.

### 4. Plaintiff's smoking

Next, Plaintiff seeks to preclude any reference to her being an "off and on" smoker for the past 30 years, and a "pack a day" smoker at the time of her cruise. (D.E. 128 at 5.) She argues that this information is irrelevant, and whatever probative value they might have is outweighed by the danger of unfair prejudice. (Id.)

Defendant argues that "smoking history is admissible, as smoking impacts orthopedic conditions and can lengthen the healing process." (D.E. 150 at 5 (citing Stewart-Patterson v. Celebrity Cruises, Inc., CASE NO. 12-20902-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 173140 (S.D. Fla. Dec. 6, 2012)).) It argues that smoking is relevant to damages. (Id.) It cites Plaintiff's medical records which indicate that Plaintiff's rehabilitation potential is "fair" because, inter alia, Plaintiff "smokes ¾ of a pack a day and will not quit").

In her Reply, Plaintiff argues that evidence of her smoking is unfairly prejudicial. (Reply at 4.)

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, "[b]ecause it allows a trial court to exclude evidence that is probative, Rule 403 is 'an extraordinary remedy which should be used sparingly.'" Aycock, 769 F.3d at 1069 (quoting King, 713 F.2d at 631). "In applying

12

Rule 403, courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting Alfaro-Moncada, 607 F.3d at 734). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

The Court finds that evidence of Plaintiff's smoking is not clearly inadmissible on all potential grounds. At a minimum, it is relevant to damages. See Stewart-Patterson, 2012 U.S. Dist. LEXIS 173140, at *9-10 ("Regarding Plaintiff's smoking, . . . persons who smoke may take longer to heal from orthopedic injuries. . . . Celebrity correctly notes that this testimony is relevant to Plaintiff's mitigation of any damages . . . ."). See also Powers v. Target Corp., Case No. 19-cv-60922-BLOOM/Valle, 2020 WL 1986968, at *5 (S.D. Fla. Apr. 27, 2020) ("The Court concludes that evidence of Plaintiff's cigarette and tobacco use is a relevant part of his medical history and his overall health both before the accident and during his recovery.") (citing In re Bard IVC Filters Prod. Liab. Litig., No. CV-16-00782-PHX-DGC, 2018 WL 2095829, at *3 (D. Ariz. May 3, 2018) ("It is common knowledge that long-term smoking can cause shortness of breath and shorten a person's life expectancy.") (citing FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 138 (2000); Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1194 (11th Cir. 2004); Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 273 (D.R.I. 2000))); Dewit v. UPS Ground Freight, Inc., No. 1:16-cv-36-MW/CAS, 2017 WL 4863279, at *2 (N.D. Fla. Aug. 22, 2017) ("Because Mrs. deWit's smoking history is relevant to the duration of her future damages, Plaintiffs' motion on this ground is due to be denied.").

If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in

13

proper context." Id. Therefore, Plaintiff's Motion is **DENIED** to the extent it seeks an order in limine excluding evidence of her smoking.

### 5. Plaintiff's cosmetic/elective surgeries

Next, Plaintiff seeks to preclude any reference to her elective/cosmetic surgeries— she had her "arms reduced, plastic surgery[,] . . . [and] had a breast uplift and reduction[,] . . . [as well as her] triple chin removed[.]" (D.E. 128 at 5-6.) She argues that this evidence is irrelevant, and any probative value it might have is substantially outweighed by the danger of unfair prejudice and confusion. (Id. (citing Richardson, 186 F.3d 1277; Allstate, 2014 WL 1292890, at *1).)

Defendant states that it "has no intent of using Plaintiff's prior cosmetic surgeries to 'prejudice' her because cosmetic surgeries are somehow 'stigmatized.'" (D.E. 150 at 6.) However, it argues that "Plaintiff's cosmetic surgeries, which were voluntary and elective in nature, may become relevant during the trial depending on her testimony. Plaintiff's history of cosmetic surgeries may be necessary for impeachment purposes." (Id.) Specifically, it argues that "Plaintiffs lawyers in personal injury cases tend to elicit testimony from their clients about how terrifying surgery is in order to inflame the passions of the jury and make common surgical procedures seem complex and dangerous. Plaintiff's election to voluntarily undergo cosmetic surgeries in the past would certainly be relevant under such a scenario." (Id.)

In her Reply, Plaintiff suggests that Defendant is "unopposed" to the request to exclude evidence of the elective/cosmetic surgeries, and argues that the Motion should therefore be granted on this issue. (D.E. 158 at 4.)

14

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, "[b]ecause it allows a trial court to exclude evidence that is probative, Rule 403 is 'an extraordinary remedy which should be used sparingly.'" Aycock, 769 F.3d at 1069 (quoting King, 713 F.2d at 631). "In applying Rule 403, courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting Alfaro-Moncada, 607 F.3d at 734). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

The Court first finds that Defendant is not "unopposed" to the requested relief, and explicitly argues that the evidence may become relevant depending on the evidence adduced at trial. (D.E. 150 at 5.) The Court agrees with Defendant and finds that evidence of Plaintiff's elective/cosmetic surgeries is not clearly inadmissible on all potential grounds. If, for example, Plaintiff testifies that her injuries required a terrifying surgery, evidence that Plaintiff voluntarily underwent several elective/cosmetic surgeries may become relevant.

If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." Id. Therefore, Plaintiff's Motion is **DENIED** to the extent it seeks an order in limine excluding evidence of her elective/cosmetic surgeries.

### 6. Bankruptcy

The Parties agree that Plaintiff's bankruptcy proceedings are irrelevant. Accordingly, Plaintiff's Motion is **GRANTED** to the extent that it seeks an order in limine excluding evidence of her bankruptcy proceeding from thirty years ago.

### 7. Plaintiff's alcohol consumption/intoxication

Next, Plaintiff seeks to preclude any evidence, argument, or suggestion that Plaintiff drank alcohol or was intoxicated. (D.E. 128 at 8.) She argues that evidence that Plaintiff consumed alcohol is irrelevant <u>unless</u> Defendant is seeking to establish that she was intoxicated, and Defendant cannot establish that Plaintiff was intoxicated because it has not designated an expert toxicologist. (<u>Id.</u> at 8-9 (citing <u>Simco v. Ellis</u>, 303 F.3d 129, 933 (8th Cir. 2002); <u>Bramlette v. Hyundai Motor Co.</u>, No. 91 C 3635, 1992 WL 213956, at *7 n.1 (N.D. Ill. Aug. 28, 1992).) She argues that any probative value her alcohol consumption may have is substantially outweighed by the risk of unfair prejudice. (<u>Id.</u>)

Defendant argues that the fact that Plaintiff drank alcohol while taking several prescription medications is relevant to causation/comparative negligence. (D.E. 150 at 6-7 (citing <u>Stewart-Patterson</u>, 2012 U.S. Dist. LEXIS 173140, at *10-11).) It argues that "alcohol consumption while taking citalopram can cause dizziness, drowsiness, and difficulty concentrating." (<u>Id.</u> at 7 (citing Drugs.com, Citalopram and Alcohol / Food Interactions).) It also appears to argue that alcohol consumption may be relevant to Plaintiff's recollection of the incident. (<u>Id.</u>)

In her Reply, Plaintiff makes no attempt to rebut Defendant's arguments. (<u>See</u> D.E. 158 at 4-5.)

16

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, "[b]ecause it allows a trial court to exclude evidence that is probative, Rule 403 is 'an extraordinary remedy which should be used sparingly.'" Aycock, 769 F.3d at 1069 (quoting King, 713 F.2d at 631). "In applying Rule 403, courts must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting Alfaro-Moncada, 607 F.3d at 734). Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

The Court finds that evidence of Plaintiff's alcohol consumption is not clearly inadmissible on all potential grounds—especially considering she consumed alcohol while taking several prescription medications. At a minimum, it is relevant to comparative negligence and causation. See Stewart-Patterson, 2012 U.S. Dist. LEXIS 173140, at *10-11 ("[T]he Court finds that the evidence of Plaintiff's alcohol consumption, combined with her medication, has at least some probative value. The jury should be allowed to consider this evidence, along with any competing evidence that Plaintiff may offer. Also, given that people commonly drink on cruise ships, the Court cannot see any unfair prejudice that would substantially outweigh the probative value of this evidence.").

If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." Id. Therefore, Plaintiff's Motion is **DENIED** to the extent it seeks an order in limine excluding evidence of her alcohol consumption.

### 7. Statements made by Augustine Morris (a/k/a "John Doe")

Finally, Plaintiff seeks to preclude statements Augustine Morris (a/k/a "John Doe") made to Defendant's guest security supervisor, Charlies Electores. (D.E. 150 at 9.) She argues that she asked for these statements in discovery but Defendant did not produce them and it should not be permitted to "ambush" her with them at trial. (Id.) She further argues that the statements should be excluded as hearsay to the extent that the statements are being offered for the truth of the matter asserted. (Id.)

Defendant argues that Plaintiff's request is vague on this issue, as she did not specify which statements she is seeking to exclude. (D.E. 150 at 7.) It argues that "[a]ny statements made by Mr. Morris to Mr. Electores during Mr. Electores' investigation would be admitted to show Mr. Morris' state of mind." (Id.) It further agues that "Mr. Morris' statements to Mr. Electores could also be admitted to show the effect on the listener, Mr. Electores, to explain the actions he took as part of the investigation of Plaintiff's incident." (Id. at 8 (citing United States v. Jiminez, 456 F.3d 1280, 1288 (11th Cir. 2009); United States v. Hawkins, 905 F.2d 1489, 1495-96 (11th Cir. 1990)).) Specifically, "Mr. Electores spoke with Mr. Morris, did not believe him to be under the influence of alcohol, found him to be very cooperative, found him coherent, found that his speech was not slurred, and observed him walk across the room without exhibiting any issues balancing." (Id.) Moreover, "[s]tatements made by Mr. Morris would be relevant to show why Mr. Electores investigated this case the way he did and to explain the actions he did or did not take." (Id.)

In her Reply, Plaintiff argues that Defendant failed to address the fact that it did not produce the statements to her in discovery. (D.E. 158 at 5.) It further argues that

18

Defendant's "state of mind" explanation "does not make sense since it has offered no reason to believe that intoxication is a state of mind." (Id. (citing Broberg v. Carnival Corp., No. 17-CV-21537, 2018 WL 4778457, at *5 (S.D. Fla. June 11, 2018), report and recommendation adopted, 2018 WL 4776386 (S.D. Fla. July 3, 2018)).) She argues that the statements should also be excluded pursuant to Rules 403 and 602.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Evid. 37(c). Rule 26(e) requires a party who has responded to an interrogatory, request for production, or request for admission to supplement or correct its disclosure or response if it learns it is incorrect or incomplete. Fed. R. Civ. P. 26(e)(1)(A).

Here, Plaintiff argues that it requested Mr. Morris's statements in discovery but Defendant did not disclose them. (D.E. 150 at 9.) In her Request for Production, served upon Defendant on February 24, 2020, Plaintiff sought "[a]ny and all 'statements' of all parties to this suit, their agents and employees, and independent witnesses which relate to or concern Plaintiff, Plaintiff's accident, Plaintiff's injuries, and/or Defendant's affirmative defenses." (D.E. 112-1 ¶ 7.) Defendant responded: "See the Guest Injury Statement of Plaintiff as well as the Witness Statement of Gary Collins that was previously provided to Plaintiff's counsel and is attached hereto." (Id.) At the time of the Request, Mr. Morris was not a party to this lawsuit, and therefore Defendant was not obligated to disclose Mr. Morris's statement as a "statement" of a party to this suit (and probably was not obligated to disclose his statement as one from an "independent witness"). (See First Am. Compl.,

19

D.E. 5.)  Plaintiff added Mr. Morris (a/k/a "John Doe") as a Defendant when she filed her Second Amended Complaint on May 26, 2020.  (D.E. 35.)   Thus, when Defendant identified Mr. Morris as "John Doe" it was obligated, pursuant to Rule 26(e), to supplement its Response regarding statements of parties to this suit.  Defendant wholly failed to rebut Plaintiff's argument that Mr. Morris's statement should be excluded for its failure to produce it in discovery.  That is, Defendant has not argued, much less established, that its failure to produce the evidence in discovery was substantially justified or harmless under Rule 37(c).  Accordingly, the Court **GRANTS** Plaintiff's Motion to the extent she seeks to exclude statements made by Mr. Morris to Mr. Electores.  See Ross v. Am. Red Cross, No. 2:09–cv–00905–GLF–MRA, 2012 WL 2004810, at *11 (S.D. Ohio June 5, 2012) (granting motion in limine seeking to exclude evidence not timely produced in discovery; Campbell v. Thomas, CIVIL ACTION NO. 2:08CV225-WAP-DAS, 2012 WL 13006183, at *3 (N.D. Miss. Jan. 17, 2012) (same).

### b.  Defendant's Motion

Defendant's Motion seeks: (1) permission to introduce evidence of "write-offs"; (2) to exclude evidence or argument that Defendant failed to adhere to the International Safety Management ("ISM") Code; (3) to exclude argument regarding Defendant's alleged failures in its post-incident investigation; (4) to preclude Plaintiff from using lay witnesses as expert witnesses as it relates to Mr. Morris being intoxicated at the time of the alleged incident; (5) to exclude evidence of prior similar incidents produced in discovery; (6) to exclude arguments regarding what nonexistent video footage may have depicted; and (7)

to preclude Plaintiff from raising speculative allegations regarding Defendant's purported business practices relating to alcohol.

### 1. Write-offs

First, Defendant seeks permission to introduce evidence of "write-offs" in the event Plaintiff attempts to introduce evidence of "phantom damages." (D.E. 130 at 1.) It argues that pursuant to Eleventh Circuit precedent, the appropriate measure of medical damages in a maritime tort case is the reasonable value determined by the jury upon consideration of any relevant evidence, which includes evidence of write-offs. (Id. at (citing Higgs v. Costa Crociere S.P.A. Co., 969 F.3d 1295, 1299-1300 (11th Cir. 2020)).) It argues that "while an alleged tortfeasor cannot introduce write-off's as a means to lessen its potential liability to a Plaintiff, the fact finder is entitled to consider evidence of healthcare write-off's to calculate the reasonable and necessary value of a Plaintiff's medical damages." (Id. at 2 (citing Easterwood v. Carnival Corp., Case No. 19-cv-22932-BLOOM/Louis, 2020 U.S. Dist. LEXIS 226569, at *7-9 (S.D. Fla. Dec. 1, 2020)).)

Plaintiff states that her "only concern . . . is that she does not want evidence indicating that a third party such as an insurance company paid for any part of her medical bills, since this would severely prejudice her by violating the very heart of the collateral source rule." (D.E. 141 at 1.) "Although she agrees that if she wants seek [sic] the full amount of her medical bills beyond what amounts were paid, it is only fair that Defendant be allowed to present evidence that not all of those billed amounts were paid, but that doesn't mean that the jury needs to hear evidence that Plaintiff may have had insurance[.]" (Id.) She proposes submitting a joint stipulation on the amounts billed and amounts paid

without reference to who paid them. (Id. (citing <u>Gould v. Carnival Corp.</u>, Case No. 19-cv-20289, D.E. 135 (S.D. Fla. Feb. 19, 2021)).)

Defendant argues that Plaintiff is incorrect about the collateral source rule. (D.E. 160 at 1-2.)

The Court finds that if Plaintiff attempts to introduce the totality of her medical bills, Defendant is permitted to introduce evidence of write-offs. In <u>Higgs</u>, the Eleventh Circuit held that "the appropriate measure of medical damages in a maritime tort case is that reasonable value determined by the jury upon consideration of any relevant evidence, including the amount billed, the amount paid, and any expert testimony and other relevant evidence the parties may offer." 969 F.3d at 1299. "Both the amount billed by healthcare providers and the amount paid by insurers are admissible as relevant to the question of fixing reasonable value." <u>Id.</u> at 1308. Evidence of write-offs is admissible on the issue of medical damages. <u>Id.</u> at 1316. <u>See also</u> <u>Easterwood</u>, 2020 U.S. Dist. LEXIS 226569, at *7-12.

Indeed, it appears that Plaintiff agrees that if she attempts to introduce evidence of the totality of her medical bills, Defendant is permitted to introduce evidence of write-offs. (<u>See</u> D.E. 141 at 1.) She merely seeks to apply the "collateral source rule" to prevent Defendant from introducing evidence that an insurer paid for paid for part of her medical bills. (<u>Id.</u>)

> The collateral source rule is both a substantive principle of damages and an evidentiary rule. In its substantive role, the collateral source rule provides that a plaintiff is entitled to recover the full value of the damages caused by a tortfeasor, without offset for any amounts received in compensation for the injury from a third party (like an insurance company or a family member).

> See Bourque v. Diamond M. Drilling Co., 623 F.2d 351, 354 (5th Cir. 1980);
> Restatement (Second) of Torts § 920A(2) ("Payments made to or benefits
> conferred on the injured party from other sources are not credited against the
> tortfeasor's liability, although they cover all or a part of the harm for which
> the tortfeasor is liable."). In its evidentiary role, the collateral source rule
> bars the admission of evidence of payments made by third parties. Bourque,
> 623 F.2d at 354 ("[T]he rule prohibits the introduction of evidence offered to
> show that [a plaintiff] already has been compensated for his injuries.").
>
> The collateral source rule is thus an exception to the basic tort principle that
> damages are designed to make the plaintiff whole -- the rule allows a plaintiff
> to recover damages for a harm for which she has already been compensated.
> In fact, it makes her more than whole. 25 C.J.S. Damages § 189 ("The
> collateral-source rule is an exception to the general rule of damages
> preventing a double recovery by an injured party, or in other words, it is an
> exception to the general rule that in a tort action, the measure of damages is
> that that will compensate and make the plaintiff whole."). But the law
> conceptualizes the collateral source payment as necessarily a windfall -- after
> all, a party other than the victim or the alleged tortfeasor has voluntarily
> chosen to bear the costs of the victim's injury -- that is better awarded to the
> plaintiff than the tortfeasor. See Sweep v. Lear Jet Corp., 412 F.2d 457, 459
> (5th Cir. 1969) (summarizing justifications for the collateral source rule).
> Moreover, the rule is understood to avoid discouraging plaintiffs from
> prudently paying for insurance by limiting their recoveries, and it deters
> negligence by punishing tortfeasors for the full amount of their wrongdoing.
> Id.
>
> It is also well established that the collateral source rule -- both in its
> substantive and evidentiary roles -- applies to maritime tort cases. See
> Bourque, 623 F.2d at 352, 354.

Higgs, 969 F.3d at 1310-11. Thus, the collateral source rule "plays two roles: a substantive one, which prohibits the reduction of a plaintiff's damages by amounts paid by a third party; and an evidentiary one, which prohibits admission of evidence that a third-party payment was made in compensation of a plaintiff's injuries." Higgs, 969 F.3d at 1314 (citing Bourque v. Diamond M. Drilling Co., 623 F.2d 351, 354 (5th Cir. 1980)). "The evidentiary role of the collateral source doctrine acts as a prophylactic, shielding the jury

23

from evidence that is likely to encourage it to violate the substantive role of the rule."  Id. (citation omitted).

In Higgs, the Eleventh Circuit found that a write-off "is not subject to the evidentiary bar of the collateral source rule."  Id. at 1315.  "The evidentiary role of the collateral source rule was never intended to shield the jury from highly probative evidence of this kind."  Id. (citation omitted).  However, it further noted that "to the extent a plaintiff worries she may be prejudiced by the jury's knowledge of the fact that she is insured, the district court may choose to admit into evidence only the total amount for which the medical bills were settled, without reference to who settled them."  Id. at 1316 (citing Stanley, 906 N.E. 2d 852, 853 (Ind. 2009)).  "In this way, admitting evidence of the paid amount -- which could have been paid by the plaintiff (indeed, part of it was), the insurer, or anyone else -- does not violate the letter or the spirit of the collateral source rule.  It is simply a figure, described as the total actual amount of payment, that provides a benchmark for the jury's consideration of the reasonable value of a provider's medical services."  Id. (citing Martinez v. Milburn Enters., Inc., 233 P.3d 205, 226 (Kan. 2010)).

This is the solution Plaintiff proposes, and Defendant does not argue against the proposal.

Accordingly, the Court **GRANTS** Defendant's Motion to the extent it seeks permission to introduce evidence of write-offs in the event Plaintiff attempts to introduce evidence of the totality of her medical bills.  The Court further finds that the Parties shall jointly submit a stipulated exhibit that shows what medical treatment was billed and what amount was paid or written off, without reference to who paid the amounts.

24

### 2. ISM Code

Next, Defendant seeks to preclude Plaintiff from arguing that Defendant failed to adhere to the ISM Code.  (D.E. 130 at 3.)  It argues that "[a]ny claim by Plaintiff that Defendant 'violated the ISM Code in untenable because any violation of the Code cannot be a basis for a negligence claim.'"  (Id. (quoting Jaber v. NCL (Bahamas) Ltd., Case No. 14-20158-CIV-KING/TORRES, 2014 U.S. Dist. LEXIS 197014, at *18 (S.D. Fla. Oct. 24, 2014) (citing Rinker v. Carnival Corp., 753 F. Supp. 2d 1237, 1243 (S.D. Fla. 2010))).)  The basis for the request is that Plaintiff's expert, Richard J. Ferraro, opined that Defendant failed to comply with the ISM Code.  (Id.)  However, the Court has granted Defendant's Daubert Motion to exclude Mr. Ferraro's opinions.  (See D.E. 155, 177.)

Plaintiff argues that she should be allowed to argue that Defendant failed to comply with the ISM Code because "even if codes such as the ISM didn't have the force of law over Defendant, such codes can be evidence of how a reasonable person would have acted differently."  (D.E. 141 (citing Cook v. Royal Caribbean Cruises, Ltd., No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012)).)

In its Reply, Defendant maintains that failure to comply with the ISM does not create a basis for a negligence claim.  (D.E. 160 at 3-4 (citations omitted).)

A plaintiff "cannot rely on the [ISM] Code to support his negligence claim against" a shipowner. Horton v. Maersk Line, Ltd., 603 F. App'x 791, 796 (11th Cir. 2015) (relying on Aronson v. Celebrity Cruises, Inc., 30 F. Supp. 3d 1379, 1396 (S.D. Fla. 2014); Rinker, 753 F. Supp. 2d 1237, 1243 (S.D. Fla. 2010); Calderon v. Offen, No. 07-61022-CIV, 2009 WL 3429771, at *4 (S.D. Fla. Oct. 20, 2009)).

25

In Cook, the defendant cruise line sought to exclude evidence regarding certain standards and guidelines, including those of the American Society of Testing and Materials, International Maritime Organization, and the Marine Committee of the Illuminating Engineering Society of North America. 2012 WL 1792628, at *1. Judge Goodman acknowledged that the standards and guidelines were not mandatory and did not have the force of law. Id. at *3. However, he found that "the law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." Id. (citing Muncie Aviation Corp. v. Party Doll Fleet, Inc., 519 F.2d 1178 (5th Cir. 1975)).[2] While Judge Goodman found that evidence of the relevant standards and guidelines may be admissible, he did not find that the plaintiff could introduce evidence that the defendant cruise line failed to comply with those standards and guidelines. See id.

The Court finds that Plaintiff may not introduce evidence that Defendant failed to comply with the ISM Code. To begin with, the Court has excluded all of Mr. Ferraro's opinions, including those that Defendant failed to comply with the ISM Code; as such, this issue is probably moot. Regardless, "[w]hile expert witnesses may testify about industry standards and customs, they may do so only to establish the standard or custom—not to prove one's conformity with that custom." Rli Ins. Co. v. Alfonso, Case No. 19-60432-CIV-ALTMAN/Hunt, 2021 WL 430720, at *18 (S.D. Fla. Feb. 8, 2021) (emphasis in

---

[2]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

original) (citing <u>Ins. Co. of the W. v. Island Dream Homes, Inc.</u>, 679 F.3d 1295, 1298 (11th Cir. 2012); <u>L.A. Fitness Int'l, LLC v. Mayer</u>, 980 So. 2d 550, 558 (Fla. Dist. Ct. App. 2008)).

Accordingly, the Court **GRANTS** Defendant's Motion to the extent it seeks to preclude Plaintiff from arguing that Defendant failed to comply with the ISM Code.

### 3. Alleged failures in post-incident investigation

Next, Defendant seeks to preclude Plaintiff from arguing that its post-incident investigation was somehow deficient. (D.E. 130 at 3.) It argues that the post-incident investigation is irrelevant to whether Defendant breached its duty of care. (<u>Id.</u> (citing <u>Felicia v. Celebrity Cruises, Inc.</u>, 286 F.R.D. 667, 671-72 (S.D. Fla. Nov. 9, 2012) (citing <u>York v. Commodore Cruise Line, Ltd.</u>, 863 F Supp. 159, 164 (S.D.N.Y. 1994); <u>Doe v. Celebrity Cruises</u>, 145 F. Supp. 2d 1337, 1346 (S.D. Fla. 2001); <u>Jaffess v. Home Lines, Inc.</u>, No. 85 Civ. 7365 (MJL), 1988 U.S. Dist. LEXIS 3481, at *19 (S.D.N.Y. Apr. 18, 1988)).)

Plaintiff argues that "the reason Defendant's investigation is relevant to Plaintiff's case, even though it does not prove the ultimate issue by itself, includes the vital issue of <u>credibility</u>." (D.E. 141 at 3 (relying on <u>Felicia</u>, 286 F.R.D. at 672).)

> For example, Defendant claims that Plaintiff never told its crew members that JOHN DOE was intoxicated, presumably to implicate that she fabricated this allegation when she decided to sue Defendant. However, in order for the jury to assess the credibility of Defendant's crew members' assertions about what Defendant witnessed or didn't witness, it will need to assess the investigation of the incident, and if it finds that Defendant's investigation was, for example, below even its own standards, certainly it can use that to assess the credibility of Defendant's crew members who both performed the

27

investigation and want the jury to believe what they allegedly witnessed or didn't witness.

(Id.)  Plaintiff argues that Magistrate Judge O'Sullivan, in ruling upon Plaintiff's Motion for Sanctions, "appears to have acknowledged the importance of Defendant's investigation in the jury's evaluation of Defendant's credibility[.]"  (Id. (quoting D.E. 131 at 14 ("During trial, the Court will decide if the plaintiff may examine Mr. Electores or any other witness in front of the jury regarding whether any body camera footage of the interview of John Doe ever existed. If that testimony is allowed, the jury would consider that evidence, along with all of the other evidence in the case, in making its decision.")).)

In its Reply, Defendant argues that the portion of Felicia upon which Plaintiff relies pertains to discoverability, not admissibility.  (D.E. 160 at 5.)  It further argues that the portion of Judge O'Sullivan's Order on which Plaintiff relies

> clearly left it to the Court to determine whether it would permit any questioning of the witnesses regarding body camera footage.  What the Plaintiff is asking the Court to allow is a trial within a trial, and it is requiring Defendant to defend against an unfounded allegation that body camera footage ever existed in this case.  The Plaintiff is asking the Defendant to prove a negative.  This has become the equivalent of the Plaintiff asking the Court to believe that Big Foot exists and then requiring the Defendant to disprove this.

(Id.)  Defendant maintains that it cannot be liable for failure to investigate.  (Id. at 5-6 (citing Doe, 145 F. Supp. 2d at 1346; Baker v. Carnival Corp., CASE NO. 06-21527-CIV-HUCK/SIMONTON, 2006 U.S. Dist. LEXIS 88249, at *10 (S.D. Fla. Dec. 5, 2006)).)  It argues that it "would be unfairly prejudicial to allow Plaintiff to tell the jury that Defendant failed to preserve an adequate amount of CCTV video, or failed to preserve body camera footage, where Plaintiff has never proven that a) there was a duty to preserve additional

28

CCTV footage, and b) Plaintiff has failed to prove body camera footage ever existed." (Id.) In this regard, Defendant notes that the Court has already denied Plaintiff's Motion for Sanctions for Spoliation of Evidence regarding Defendant's alleged failure to preserve additional CCTV footage. (Id.) As such, it argues that "Plaintiff should not be permitted to argue to the jury that Defendant was under any duty to preserve more footage, or that Defendant was somehow negligent in failing to preserve additional footage." (Id.) It further argues that "Plaintiff should be precluded from arguing that anything nefarious occurred regarding the Defendant's investigation of the subject incident. This is completely unfounded and nothing more than conjecture." (Id.)

Although the Court agrees with Defendant that its post-incident investigation is irrelevant to whether it breached its duty of care to Plaintiff, the Court is not prepared at this juncture to exclude all evidence relating to Defendant's investigation. The Court finds that this issue should be determined in context at trial. Accordingly, Defendant's Motion is **DENIED** to the extent it seeks to preclude Plaintiff from introducing evidence or argument that Defendant's post-incident investigation was deficient.

### 4. John Doe's intoxication

Next, Defendant seeks to preclude Plaintiff from using lay witnesses from testifying that Mr. Morris (a/k/a "John Doe") was intoxicated at the time of the incident. (D.E. 130 at 4.) It argues that the proper inquiry in this case is the one raised in Broberg—i.e., whether Mr. Morris "was under the influence of alcohol to such an extent as to be a danger to [himself and/or others] and whether [Defendant] was on notice that [he] was so intoxicated, yet continued to serve [him] alcohol, and as a result, [the alleged Subject

Incident occurred].” (Id. at 5 (quoting Broberg v. Carnival Corp., 798 F. App'x 586, 590 (11th Cir. 2020)). It argues that a toxicologist is required to answer this question, and Plaintiff has not designated an expert toxicologist. (Id. at 4-5.) It argues that Plaintiff herself has argued that Defendant should not be permitted to introduce evidence that Plaintiff was intoxicated because it did not designate an expert toxicologist, and by the same token Plaintiff should be precluded from introducing lay witness evidence of Mr. Morris's intoxication. (Id.) It argues that the record evidence, “outside of Plaintiff's carefully curated self-serving affidavit, does not support a finding that Mr. Morris was intoxicated at the time, falls woefully short of any evidentiary standard to prove such and the danger of unfair prejudice substantially outweighs its probative value.” (Id. at 4.) It further argues that Plaintiff “has not laid the proper predicate for herself, Mr. Collins or Ms. Powell to be able to opine as to whether Mr. Morris was intoxicated at the time of the Subject Incident.” (Id.)

Plaintiff argues that “both parties are entitled to introduce evidence of intoxication without an expert, as was found in the case of Morrison v. Royal Caribbean, Case 1:19-cv-21220-JG[.]” (D.E. 141 at 4.) She attaches to her Response the motions in limine filed in Morrison, (D.E. 141-2), and Judge Goodman's Order on the motions in limine in which he denied plaintiff's motion to the extent it sought to exclude evidence that the plaintiff was intoxicated, (D.E. 142-3 at 3).

In its Reply, Defendant maintains that Plaintiff has not adduced any evidence that Mr. Morris was intoxicated at the time of the incident or that Defendant had any knowledge of any such intoxication. (D.E. 160 at 7.) It attempts to distinguish Morrison on the

30

grounds that in that case "there appears to have been ample evidence in the record that the plaintiff had been drinking." (Id.)

The Court finds that evidence that Mr. Morris was intoxicated is not clearly inadmissible on all potential grounds. Pursuant to Rule 701, a lay witness may testify to opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005). It is at least possible that Plaintiff's lay witnesses could rationally perceive that Mr. Morris was intoxicated—a fact which, by Defendant's own admission, is relevant. See United States v. Mastberg, 503 F.2d 465, 460 (9th Cir. 1974) ("While the older view might preclude witnesses from giving their 'opinion' on whether a particular person appeared nervous or intoxicated, under the modern, and probably majority, view a lay witness may state his opinion that a person appeared nervous or intoxicated.") (citations omitted); Lipp v. Ginger C, L.L.C., 229 F Supp. 3d 1018, 1023 (W.D. Mo. 2017) (permitting lay witness testimony on issue of intoxication) (citing Missouri v. Vanosdol, 974 S.W.2d 650, 652 (Mo. Ct. App. 1998) ("Intoxication may be proved by the testimony of any witness, including a lay witness, who had a reasonable opportunity to observe the alleged offender."); Missouri v. England, 92 S.W.3d 335, 342 (Mo. Ct. App. 2002) ("Bloodshot and watery eyes, slurred speech, and the smell of alcohol on one's breath are indicia of intoxication.")).

If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in

proper context." Id. Therefore, Defendant's Motion is **DENIED** to the extent it seeks an order in limine excluding lay witness testimony that Mr. Morris was intoxicated.

### 5. Prior similar incidents

Next, Defendant argues that Plaintiff should be precluded from introducing evidence, produced in discovery, of prior similar incidents. (D.E. 130 at 6.) Although Defendant produced more than thirty prior incidents, the Parties focus on the following four, as described in Defendant's disclosures:

1. Ruiping Li, who fell on the *Voyager of the Seas* on April 25, 2016 and "Was Pushed By Other People And Fell Down. Her Right Joint Was Broken. -asked Colleague To Give Me Ice In Service Desk For Urgent Support. -went Downstairs And Saw The Doctor. - had Simple Treatment By Doctor." (D.E. 97-4 at 1).)

2. Emma Ashton, who fell on the *Legend of the Seas* on December 25, 2016, who according to Defendant's notes "Fell Down On Her Left Wrist, Was Pushed Away By Other Guest[,]" and who, according to her report, was dancing, on Dancefloor, Othe[r] [ ]guest On The Cruise Spun Around With Arms And Legs And Knocked Approx 5 Other Guest Over Including Myself. As A Result I Twisted My Ankle And Fell On My Left Wrist Which Took All Of My Weight. 15 Minutes Prior To The Incident We Had Asked For This Patron To Be Removed Due To His Disorderly State." (Id.)

3. Tysen Urry, who fell on the *Voyager of the Seas* on January 4, 2017, and stated that he was "standing / Dancing On Podium In Front Of Solarium Pool & Got Pushed From Behind By Stranger & Fell Into Pool & My Head Hit Bottom Of Pool." (Id.)

4. Kim O'Connor, who suffered an injury on the *Radiance of the Seas* on February 1, 2018 when she "Was dancing and lady from behind as ship list ran into the back of me and pushed me into the wall, shoulder took the impact[.]" (Id. (citing D.E. 97-4 at 2).)

Defendant argues that these incidents are not substantially similar enough to Plaintiff's incident to be admissible. (D.E. 130 at 6-8 (citing Sorrels v. NCL (Bahamas) Ltd., 796 F.3d 1275, 1287-88 (11th Cir. 2015)).)

Plaintiff argues that the prior incidents involving Li, Ashton, Urry, and O'Connor are substantially similar to Plaintiff's incident and therefore admissible. (D.E. 141 at 5-6.) Plaintiff also cites the following exchange from the deposition transcript of Defendant's Guest Security Supervisor, Charlie Electores:

> Q.      Mr. Electores, have you ever investigated an incident aboard a Royal Caribbean ship where there was some suggestion that one passenger was intoxicated, had too much to drink, and touched or grabbed, inappropriately, another passenger? Have you ever investigated anything like that?
>
> MR. PEREZ:      Object to form.
>
> THE WITNESS:    Can I continue, sir? Can I answer that question?
>
> MR. PEREZ:      Yes, you can.
>
> THE WITNESS:    To be honest with you, sir, I have a lot of investigation with that kind of incident. I encounter a lot of investigation with that incident.
>
> BY MR. ARONFELD:
>
> Q.      Have you ever investigated an incident of any kind that involved an unwanted touching, an unwanted grabbing by one passenger to another that occurred around the Centrum area or dance floor, in that area?
>
> MR. PEREZ:      Form.
>
> THE WITNESS:    Yes, sir.
>
> BY MR. ARONFELD:
>
> Q.      How many of those types of incidents have you investigated before, Mr. Electores?
>
> A.      I have encountered a lot of incidents, more of a serious incident.
>
> Q.      More than a dozen times?

A. More than that, sir. More than that.

. . .

Q. So has that ever happened, in your experience, at or around the Centrum? Has any bar staff called you and said, Hey, we've got somebody who's had a little too much to drink here?

MR. PEREZ: Form.

THE WITNESS: At that time when the incident took place?

Q. No, no. Just in general, before Mrs. Reed's incident, have you ever gotten a call from bar staff at or near the Centrum that says, Hey, we've got somebody here who's had a little too much?

A. No. No, sir.

Q. I don't mean the day of Mrs. Reed. I just mean during your experience working for Royal Caribbean. Not that day, just in times before.

MR. PEREZ: Form.

THE WITNESS: It's very rare it happens in the Centrum. Most of the incidents took place at the disco late at night, but during the dance activity, we don't have much, any information about guests being aggressive in that place.

BY MR. ARONFELD:

Q. I understand you say it's rare. I understand that, Mr. Electores, but has it ever happened, in your experience, at the Centrum?

A. In the same ship, as far as I remember, there was a verbal argument at that time. Once I remember in that place, in the Centrum.

Q. And who called you when that happened? Did bar staff call you?

A. Yeah, the bar staff. But when I get there, the bar staff already deescalated the situation.

Q. Oh, good.

34

A.    Before I get there.

Q.    So the bar staff is supposed to alert you --

MR. PEREZ:    Form.

Q.    -- if a passenger – they're supposed to contact you --

MR. PEREZ:    Form.

THE WITNESS: Anybody can alert us, because we are only for security on duty at that time. Right, we are -- we have a duty also, we have duty all over the ship.  So any crew members are well trained, because we are also trained for see something, say something.

Q.    They're supposed to do that, correct?

A.    Yes, they're supposed to do that.

(D.E. 141 at 6-8 (quoting Electores Dep. (D.E. 109-1) at 26:17 – 274:18, 30:9 – 32:4) (emphasis added by Plaintiff).)  Plaintiff argues that this evidence is admissible to establish notice.  (Id. (citing Fisher v. Bumbo Int'l Tr., Case No.: 1:14–cv–22209–UU, 2014 WL 12042519, at *6 (S.D. Fla. Aug. 27, 2014)).)

Defendant argues that Plaintiff failed to establish that the four prior incidents are substantially similar enough to be admissible, and distinguishes those prior incidents from Plaintiff's incident.  (D.E. 160 at 8-9.)

"[A] plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'"  Guevara, 920 F.3d at 720 (quoting Jones v. Otis Elevator Co., 861 F.2d 655, 661-62 (11th Cir. 1988)).  "The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the

35

scenario presented and the desired use of the evidence." Sorrels, 796 F.3d at 1287. The Eleventh Circuit has held that prior incidents are sufficiently similar when the conditions surrounding the two incidents are similar enough to allow the jury to draw a reasonable inference concerning the Defendant's ability to foresee the type of occurrence and its result. Id. (discussing Borden, Inc. v. Fla. E. Coast Ry. Co., 772 F.2d 750, 755 (11th Cir. 1985)).

Initially, the Court finds that Mr. Electores's testimony does not describe any substantially similar incidents that could establish constructive notice.

The Court further finds that the prior incidents involving Ruping Li, Tysen Urry, and Kim O'Connor are not substantially similar to Plaintiff's incident to be probative of constructive notice. See Sorrels, 796 F.3d at 1287.

However, the Court finds that the prior incident involving Emma Ashton is not clearly inadmissible on all potential grounds. Although the record does not reflect that Ashton's incident involved an intoxicated passenger injuring another passenger, a reasonable jury could find that it involved an unruly passenger injuring another passenger. Depending on the testimony adduced at trial, the conditions surrounding the Ashton incident may be similar enough to Plaintiff's incident to allow the jury to draw a reasonable inference concerning Defendant's ability to foresee the type of occurrence and its result. Sorrels, 796 F.3d at 1287 (discussing Borden, Inc., 772 F.2d at 755). As such, it is not clearly inadmissible on all potential grounds. If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." Id.

Accordingly, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART** to the extent it seeks an order in limine excluding evidence of prior similar incidents.

### 6. Nonexistent video footage

Next, Defendant argues that Plaintiff should not be permitted to raise arguments or present evidence regarding what she believes the unpreserved CCTV video footage would show and what the "nonexistent" body camera footage would show if it existed. (D.E. 130 at 8.)  At the time Defendant filed its Motion in Limine, Judge O'Sullivan had issued an Order on Plaintiff's Motion for Sanctions for Spoliation of Evidence on these issues and found Plaintiff's arguments to be meritless.  (Id. (discussing D.E. 66).)  It argues that "absent a reversal of the Honorable Magistrate's Order and a finding for an adverse inference as to the CCTV video depicting the events leading up to, including and after the subject incident along with an adverse inference as to body camera footage which does not exist, Plaintiff be precluded from arguing, insinuating, suggesting or attempting to proffer evidence as to what the CCTV video or body camera footage would/might have depicted." (Id.)

Plaintiff relies on the arguments made in her Objections to Judge O'Sullivan's Order. (D.E. 141 at 9.)  She further argues that even if the Court overrules her Objections, she should still be permitted to testify that she personally witnessed John Doe's "disorderly state approximately 10-15 minutes before her incident, and therefore it makes no sense why she couldn't also testify that she believes that this disorderly behavior would have been visible on the remaining CCTV footage had it been preserved, since Defendant conveniently did not preserve the 10–15-minute mark prior to Plaintiff's fall when she

allegedly observed this behavior." (Id. at 9-10.)  Plaintiff does not address the allegedly missing body camera footage.[3]  (See id.)

In Defendant's Reply—which it filed after the Court overruled Plaintiff's Objections to Judge O'Sullivan's Order on Plaintiff's Motion for Sanctions for Spoliation of Evidence, (see D.E. 156)—Defendant argues that "Plaintiff essentially wishes to argue to the jury that Defendant spoliated evidence without a judicial finding that Defendant did, and without any actual legal basis to make this argument." (D.E. 160 (citing Doe v. NCL (Bahamas) LTD, Case No. 11-22230-Civ-COOKE/TURNOFF, 2012 U.S. Dist. LEXIS 167963, at *10-11 (S.D. Fla. Nov. 27, 2012)).)

The Court agrees with Defendant.  On September 3, 2020, Plaintiff filed a Motion for Sanctions for Spoliation of Evidence arguing that Defendant had a duty to preserve more than the approximately six minutes of CCTV video footage that it did preserve, and further had a duty to preserve footage from the body cameras worn by Defendant's investigators. (D.E. 57.)  On October 2, 2020, Judge O'Sullivan denied the Motion, finding that (1) Defendant did not have a duty to preserve more than the approximately six minutes of CCTV footage that it did preserve, (id. at 9-15), and (2) there was no prejudice to

---

[3]     On January 4, 2021, Plaintiff filed a second Motion for Sanctions for Spoliation of Evidence, seeking sanctions for the alleged spoliation of body camera footage of Charlie Electores's interview of Mr. Morris (a/k/a "John Doe").  Judge O'Sullivan denied the Motion. (D.E. 131.)  In his Order, Judge O'Sullivan: (1) observed that "[t]he parties dispute whether body camera footage of the interview of John Doe ever existed[,]" (id. at 5); (2) found that Plaintiff has the burden of establishing the existence of the body camera footage, (id. at 7-8); and (3) found that Plaintiff failed to carry her burden of establishing that the body camera footage ever existed, (id. at 10-11).  Judge O'Sullivan further found that even if Plaintiff had carried her burden, he would "not have been inclined to grant the type of relief sought by the plaintiff in the instant Motion." (Id. at 12.)  Plaintiff filed Objections to Judge O'Sullivan's Order, (D.E. 149), which the Court overruled, (D.E. 165).

Plaintiff stemming from the allegedly missing body camera footage, (id. at 15). Second, he found that Defendant "preserved a reasonable amount of the CCTV footage given the plaintiff and other witnesses' descriptions of the incident, including the plaintiff's oral statement that John Doe was intoxicated." (Id. at 17.) On October 9, 2020, Plaintiff filed Objections to Judge O'Sullivan's Order. (D.E. 71.) On March 4, 2021, the Court issued an Order overruling the Objections. (D.E. 156.)

Accordingly, the Court **GRANTS** Defendant's Motion to the extent it seeks an order in limine precluding Plaintiff from arguing, insinuating, or suggesting that Defendant had a duty to preserve more CCTV footage than it did preserve, or arguing what the allegedly missing body camera footage and CCTV footage would have shown if it existed. However, this Order does not preclude Plaintiff (or any other lay witness) from testifying as to what she observed in the ten to fifteen minutes before the incident pursuant to Rule 701 of the Federal Rules of Evidence.

### 7. Defendant's purported business practices relating to alcohol

Finally, Defendant seeks to preclude Plaintiff from raising "speculative" allegations regarding Defendant's purported business practices relating to alcohol, as contained in the Second Amended Complaint. (D.E. 130 at 8-9.) It argues that "[n]ot only has Plaintiff failed to conduct any discovery to support these baseless claims, Plaintiff's allegations are attenuated and untethered to the instant case." (Id. at 9.) It further argues that the prejudicial effect of these allegations far outweigh any probative value." (Id.) Thus, it requests that "Plaintiff be precluded from arguing, suggesting, insinuating or attempting to proffer evidence relating to allegations set for in paragraphs 35-41 and paragraphs 50-56

39

of Plaintiff's Second Amended Complaint." (Id.) Paragraphs 35-41 are identical to 50-56,

and allege:

35. Upon information and belief, RCCL deliberately makes alcohol available to passengers and crew aboard its vessels, despite knowing that alcohol is banned for safety reasons aboard vessels operated by the U.S. Government and military and aboard U.S. flagged merchant ships.

36. The sale of alcohol, in fact, represents one of the top sources of on-board revenue to RCCL, grossing over $200,000,000.00 per year, upon information and belief.

37. To maximize this revenue, RCCL deliberately designs its vessels such as the *Vision of the Seas* to ensure that there are alcohol serving stations in every nook and cranny of the ship.

38. Neither RCCL nor the law of the relevant flag nation(s) impose a "legal limit" or any other legal consequences for alcohol consumption or intoxication aboard RCCL ships. Neither does RCCL employ any systematic method to keep track of how much alcohol a particular passenger has consumed over time, other than perhaps looking for visual signs of intoxication, which of course means that the individual is already drunk.

39. RCCL, quite to the contrary, deliberately does as much as possible to encourage and facilitate alcohol consumption aboard its vessels.

40. RCCL fully understands and expects that alcohol consumption by passengers will result in the diminution of their inhibitions and good judgment, which RCCL, upon information and belief, expects will foster the general party atmosphere that RCCL desires, and promotes aboard its vessels, so as to enhance some of its other revenue producing shipboard activities such as gambling and the purchase of more alcohol.

41. Defendant RCCL thus knew that the presence of intoxicated passengers aboard its vessels, especially in the dance parties where the passengers are encouraged to drink, dance, and have fun, are common.

(Second Am. Compl., D.E. 35.)

Plaintiff opposes this request on the grounds that the allegations are relevant to facts

in issue:

Defendant is plainly mistaken about the relevance of the paragraphs it cites to. For example, paragraph 35 is relevant to show that Defendant knows of the danger of alcohol, and therefore of the need to carefully observe intoxicated passengers. Paragraphs 36-37 and 39-40 are relevant to show the motive Defendant has to nonetheless serve alcohol despite this danger. Paragraphs 38 and 41 are relevant to show some of the reasons Defendant failed either to adequately identify JOHN DOE as intoxicated and/or to do anything about him if it did identify him as intoxicated. This is likewise true for paragraphs 50-56 of Plaintiff's operative complaint. Furthermore, to the extent that Defendant is arguing that Plaintiff is somehow attempting to present evidence that was not disclosed in discovery, this motion is premature as Defendant has failed to identify any evidence that it asserts was not produced in discovery, so as to afford Plaintiff the opportunity to either show that it was or why Plaintiff wasn't required to disclose it (i.e., if the documents were Defendant's own documents it had anyway such as its policies and procedures produced in a previous case, or perhaps even in this case).

(D.E. 141 at 10.)

In its Reply, Defendant argues that "Plaintiff is attempting to prejudice Defendant and disparage it with its baseless allegations regarding Defendant's business practices relating to alcohol.  These allegations are clearly more prejudicial than probative."  (D.E. 160 at 10 (citing Johnson v. Carnival, Case No.: 07-20147-CIV-UNGARO, 2007 U.S. Dist. LEXIS 104081 (S.D. Fla. Dec. 13, 2007)).)  It argues that "Plaintiff's allegations in her Second Amended Complaint that Defendant makes alcohol available on its vessels despite knowing that alcohol is banned on military vessels and merchant ships has no bearing on the issues presented in this case. The same can be said about Defendant's alleged revenue resulting from alcohol sales."  (Id.)

It is unclear from the Parties' submissions whether there is evidence supporting the at-issue allegations, but if there is, the Court cannot find at this juncture that it is inadmissible on all potential grounds.  As a general observation, evidence regarding

41

Defendant's business practices relating to alcohol could be relevant to Count III of the Second Amended Complaint, which alleges that Defendant over-served Mr. Morris alcohol. (See D.E. 35 ¶¶ 49-68.) More specifically, evidence that Defendant, for example, "deliberately does as much as possible to encourage and facilitate alcohol consumption aboard its vessels" could be relevant to whether it breached the duty of care it owed to Plaintiff. And without context, the Court cannot determine whether the prejudicial effect of such evidence substantially outweighs its probative value. In any event, assuming arguendo that any such evidence exists, it is not clearly inadmissible on all potential grounds.

If evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." Id. Therefore, Defendant's Motion is **DENIED** to the extent it seeks an order in limine excluding evidence and argument regarding Defendant's purported business practices relating to alcohol.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Omnibus Motion in Limine is **GRANTED IN PART AND DENIED IN PART** (D.E. 128) consistent with this Order; and

2.      Defendant's Omnibus Motion in Limine is **GRANTED IN PART AND DENIED IN PART** (D.E. 130) consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 20th day of August, 2021.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**